RECEIVED
IN LAKE CHARLES, LA.

MAY 15 2014

TONY R. MOORE, CLERK
BY_____
DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PNK (LAKE CHARLES), L.L.C. | * | CIVIL ACTION NO. 2:13-CV-474 |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | JUDGE MINALDI |
| CHARBEL TANNOUS, CONSTANDI | * | |
| LUBBAT, DERRICK WELDON & | * | |
| STEPHEN MOUTON | * | |
| | * | |
| Defendants | * | MAGISTRATE JUDGE KAY |

*************************************************************************

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment [Doc. 39], filed by PNK (Lake Charles), L.L.C. (PNK), to which the *pro se* defendant, Stephen Mouton, has filed a brief Opposition [Doc. 41]. For the following reasons, PNK's Motion is hereby **GRANTED IN PART**, and **DENIED IN PART**.

### FACTS & PROCEDURAL HISTORY

PNK owns and operates the L'Auberge du Lac Casino (casino) in Lake Charles, Louisiana.[1] In early 2011, Derrick Weldon and Stephen Mouton were employed as roulette dealers at the casino, during which time they intentionally allowed two confederates, Charbel Tannous and Constandi Lubbat, to place late bets on the roulette wheel, after the roulette ball had already dropped into the winning number's slot, in exchange for cash payments; ultimately, this resulted in losses to PNK which PNK claims total $1.2 million.[2]

PNK's Director of Surveillance at the casino, Darrin Hoke, attests to the fact that Mr. Weldon "dealt to Tannous and/or Lubbat on 10 occasions between January and May 2011,

---

[1] Compl. [Doc. 1], at ¶ IV.
[2] Compl. [Doc. 1], at ¶¶ VI-VIII, X.

1

resulting in a loss to PNK of $947,050."[3]  Mr. Mouton "dealt to Tannous and/or Lubbat on 3

occasions between March and May 2011, resulting in a loss to PNK of $171,000."[4]  Mr.

Tannous' winnings totaled $949,850.00, and Mr. Lubbat's winnings totaled $168,200.00.[5]  Mr.

Mouton was paid $7,700.00 for his participation in the conspiracy.[6]

 Mr. Tannous, Mr. Lubbat, Mr. Weldon, and Mr. Mouton (defendants) were indicted in

the Western District of Louisiana on June 22, 2011 for conspiracy[7] and wire fraud.[8]  Mr. Mouton

entered into an agreement to plead guilty to the conspiracy charge on March 22, 2012.[9]  On

October 30, 2012, Mr. Mouton was sentenced to a probation term of five years, and was ordered

to pay restitution in the amount of $110,000.00 to the casino at a rate of $500.00 per month.[10]

Mr. Tannous was ordered to pay $909,700.00 in restitution, and Mr. Weldon was ordered to pay

$831,900.00 in restitution.[11]  Mr. Lubbat was ordered to pay restitution in the amount of

$156,200.00.[12]

 PNK filed the instant suit on March 5, 2013, asserting causes of action for fraud,

fraudulent breach of fiduciary duties, breach of an employment contract, breach of a gaming

contract, and a civil claim pursuant to 18 U.S.C. § 1962(c) and (d) of the Racketeer Influenced

and Corrupt Organizations (RICO) statute.[13]  In its complaint, PNK alleges that the defendants,

---

[3] Decl. of Darrin Hoke [Doc. 39-7], at ¶¶ 1, 6.
[4] *Id.* at ¶ 6.
[5] *Id.*
[6] Stipulated Factual Basis for Guilty Plea [Doc. 39-5], at 2.
[7] *See* 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States).
[8] *See generally* Indictment [Doc. 9 in case no. 2:11-cr-153].  *See also* 18 U.S.C. § 1343 (fraud by wire, radio, or television).
[9] Plea Agreement [Doc. 85 in case no. 2:11-cr-153].
[10] J. [Doc. 135 in case no. 2:11-cr-153].
[11] *Id.*
[12] Minutes of Court [Doc. 141 in case no. 2:11-cr-153].
[13] *See generally* Compl. [Doc. 1].

2

as co-conspirators, are liable *in solido* for the losses incurred as a result of their criminal conspiracy.[14]

On August 28, 2013, a default was entered against Mr. Weldon for failure to answer or file any defense in this case.[15]  A default judgment has not yet been entered against him.

Mr. Tannous and PNK have entered into a Consent Judgment [Doc. 36].  Mr. Tannous has agreed to pay PNK $909,700.00, the amount of restitution in the criminal case, "with deduction for any amounts paid to or collected by PNK (Lake Charles), L.L.C.[,] as restitution by Charbel Tannous and any other defendant" in the criminal case.[16]

Mr. Lubbat has entered into a settlement agreement with PNK which attests to the fact that Mr. Lubbat has already paid restitution to PNK in the amount of $168,200.00, and requires Mr. Lubbat to pay an additional $85,000.00 to PNK in several installments by June 14, 2015.[17] This agreement between Mr. Lubbat and PNK is predicated on the instant action being stayed, as to Mr. Lubbat, until PNK receives final payment under the agreement, at which time PNK has agreed to release Mr. Lubbat from all claims and demands in connection with this matter and dismiss said claims, with prejudice.[18]  PNK and Mr. Mouton, who is unrepresented by counsel, have not entered into any such similar agreement.

## LAW & ANALYSIS

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a).  "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to

---

[14] Compl. [Doc. 1], at ¶ XII.
[15] *See* Not. of Entry of Default [Doc. 28].
[16] Consent J. [Doc. 36].
[17] *See generally* Not. of Settlement and Mot. to Abate Case Between Pl. and Constandi Lubbat to Satisfy Settlement Terms [Doc. 42].
[18] *Id.*

return a verdict for the nonmoving party." *Clayton v. Columbia Cas. Co.*, 547 Fed. Appx. 645, 648 (5th Cir. 2013) (*quoting Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (additional citation omitted)). A fact is considered "'material' if its resolution could affect the outcome of the action." *Id.* (citation omitted). In ruling on a motion for summary judgment, the court views all evidence in the light most favorable to the non-moving party. *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (*citing United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)). A nonmovant may not rest on "conclusory allegations or unsubstantiated assertions." *Clayton*, 547 Fed. Appx. at 648-49 (*citing Tilman v. S. Wood Preserving of Hattiesburg, Inc.*, 250 F. App'x 622, 624 (5th Cir. 2007) (citation omitted)). In order to survive the movant's motion, "the nonmovant must set forth specific facts to show a genuine dispute." *Id.* at 649 (*citing Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000)).

As a preliminary matter, it should be noted that Mr. Mouton is representing himself in this proceeding. The court "recognizes that pleadings filed by individuals proceeding *pro se* are held to a less stringent standard than those drafted by attorneys." *Broussard v. Rubin*, No. 00-cv-1724, 2001 U.S. Dist. LEXIS 1496, at *4 (W.D. La. Jan. 16, 2001) (*citing Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983)). As such, the court shall draw all reasonable inferences that can be drawn from the liberal construction of such pleadings. *Id.* (*citing Haines*, 404 U.S. at 521).

## 1. Estoppel

PNK cites Fifth Circuit case law for the proposition that a person is estopped from denying that he or she engaged in the charged conduct stemming from a criminal proceeding

after that person has been convicted of a crime.[19]  A discussion of this can be quickly dispensed

with as unnecessary, however, as Mr. Mouton does not dispute his involvement in the roulette

scheme that forms the basis of this action.  Rather, he only asks that it be recognized that his

involvement in the scheme did not begin until March.[20]

### 2.  Fraud

PNK asserts a claim for delictual fraud against Mr. Mouton pursuant to Louisiana Civil

Code article 2315.[21]  *See also* LA. CIV. CODE ANN. art. 1953 (1985).  "Delictual actions are

subject to a liberative prescription of one year.  This prescription commences to run from the day

injury or damage is sustained."  LA. CIV. CODE ANN. art. 3492 (1992); *see also* LA. CIV. CODE

ANN. art. 3447 (1983).  However, the Louisiana Supreme Court has recognized that the doctrine

of *contra non valentem* prevents the running of liberative prescription "where the cause of action

is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is

not induced by the defendant."  *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010)

(citation omitted).

The scheme herein ran from January until May 2011.  It can fairly be said that PNK was

aware of the cheating scheme, at the absolute latest, as of the filing of the criminal indictment on

June 22, 2011.[22]  As such, the claim for delictual fraud prescribed on June 22, 2012, at the latest,

and most likely much earlier.  As the instant matter was not filed until March 5, 2013,[23] the fraud

claim has prescribed.  Accordingly,

**IT IS ORDERED** that PNK's Motion for Summary Judgment [Doc. 39] is hereby

**DENIED** as to PNK's claim for delictual fraud.

---

[19] *See* Memo. in Supp. [Doc. 39-1], at 5 (*citing Grothues v. IRS*, 226 F.3d 334, 339 (5th Cir. 2000)).
[20] Opp. [Doc. 41], at 2.
[21] Memo. in Supp. [Doc. 39-1], at 6.
[22] *See generally* Indictment [Doc. 9 in case no. 2:11-cr-153].
[23] Compl. [Doc. 1].

### 3. Breach of Employment Contract & Breach of Fiduciary Duties[24]

PNK next asserts a claim against Mr. Mouton for breach of his oral employment contract.[25] Mr. Mouton agreed at the time of his hiring that he would abide by PNK's Code of Ethical Conduct, Employee Handbook, Table Games handbook, and Table Games Manuals, all of which required that he enforce the rules of the table games in his charge honestly.[26]

Under Louisiana law, "[t]he relationship between an employer and an employee is contractual." *Clark v. Christus Health N. La.*, 47 So. 3d 1135, 1139 (La. Ct. App. 2010) (citations omitted). An employment contract will be found where two parties engage in the consensual giving of services in the form of labor for a fixed price. *Id.* (citing *Vining v. Bardwell*, 482 So. 2d 685 (La. Ct. App. 1985), *writ denied*, 487 So. 2d 439 (La. 1986)). No one here disputes that a valid oral contract of employment existed between PNK and Mr. Mouton.

PNK grounds its argument regarding Mr. Mouton's breach of his employment contract in terms of Mr. Mouton's alleged breach of his duties of fidelity and loyalty.[27] As there is significant overlap between PNK's claim for breach of an employment contract and its claim for breach of fiduciary duties, and the fiduciary duties in both instances arise out of the employer-employee relationship, the claim for breach of fiduciary duties herein encompasses and subsumes the claim for breach of an employment contract. As such, these claims shall be analyzed together.

"As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 40 So.

---

[24] As opposed to an action for delictual fraud, "a suit for breach of fiduciary duties is generally a personal action governed by the ten-year prescriptive period of La. Civ. Code art. 3499." *Slayter & Slayter, L.L.C. v. Ryland*, 953 So. 2d 1000, 1004 (La. Ct. App. 2007) (citing *Beckstrom v. Parnell*, 730 So. 2d 942 (La. Ct. App. 1998)).
[25] Memo. in Supp. [Doc. 39-1], at 7.
[26] *See id. See also* Decl. of Darrin Hoke [Doc. 39-7], at ¶ 4.
[27] Memo. in Supp. [Doc. 39-1], at 7.

3d 394, 404 (La. Ct. App. 2010), *writ denied* 45 So. 3d 1100 (La. 2010) (*citing Omega Ctr. for Pain Mgmt., L.L.C. v. Omega Inst. of Health, Inc.*, 975 So. 2d 48, 51 (La. Ct. App. 2007)).  As a general rule, employees owe duties of fidelity and loyalty to their employers/principals.  *Heart's Desire, L.L.C. v. Edwards*, No. 46,222-CA, 2011 La. App. Unpub. LEXIS 245, at *20-21 (La. Ct. App. Apr. 27, 2011) (*citing Texana Oil & Refining Co. v. Belchic*, 150 La. 88, 90 (1922); *Neal v. Daniels*, 217 La. 679 (1950); *Odeco Oil & Gas Co. v. Nunez*, 532 So. 2d 453 (La. Ct. App. 1989), *writ denied*, 535 So. 2d 745 (La. 1989) (additional citations omitted)).

"[H]istorically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior . . . for the purpose of his own financial or commercial benefit."  *Harrison v. CD Consulting, Inc.*, 934 So. 2d 166, 170 (La. Ct. App. 2006) (citations omitted).  An employee violates the law when he "serves or acquires any private interest of his own in opposition to his employer's business or purpose.  This is a rule of common sense and honesty as well as of law."  *Id.* at *21 (*citing Texana Oil & Refining Co.*, 150 La. At 90; *Daniels*, 217 La. at 679 (additional citations omitted)).  Employees are

> duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, or servant, who is under contract or other legal obligation to represent or act for another in any particular business or line of business must be loyal and faithful to the interest of such other in respect to such business or purpose.

*Harrison*, 934 So. 2d at 170 (*citing Boncosky Services, Inc. v. Lampo*, 751 So. 2d 278, 287 (La. Ct. App. 1999)).  To establish a cause of action for a breach of fiduciary duty, a plaintiff must show "(1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach."  *Brockman ex rel. Trusts of Brockman v. Salt Lake Farm P'ship*, 768 So. 2d 836,

844 (La. Ct. App. 2000) (*citing Oliver v. Cent. Bank*, 658 So. 2d 1316 (La. Ct. App. 1995)).

Also, the plaintiff must demonstrate proof of "fraud, breach of trust or action outside the limits of

the fiduciary's authority." *Id.* (citation omitted). *See also TTV, L.L.C. v. Simmons*, 58 So. 3d

684, 691 (La. Ct. App. 2011) (*citing Sampson v. DCI of Alexandria*, 970 So. 2d 55 (La. Ct. App.

2007)).

Mr. Mouton was charged with handling large sums of money for his employer, PNK, on

a nightly basis. PNK trained him, and entrusted him with this position, relying on his loyalty and

fidelity as their agent and employee as he dealt with third parties in his capacity as a roulette

dealer. Mr. Mouton knowingly and voluntarily breached this duty in engaging in willful

malfeasance with his co-conspirators for the purpose of obtaining profits for himself at the

expense of his employer. PNK suffered significant damages as a result. None of these facts are

in dispute. Accordingly,

**IT IS ORDERED** that PNK's Motion for Summary Judgment [Doc. 39] is hereby

**GRANTED** as to PNK's claims for breach of fiduciary duties.

### 4. Damages

There is no genuine issue in dispute as to the total amount of damages incurred by PNK

as a result of the defendants' actions. The only remaining question is what proportion of those

damages are attributable to Mr. Mouton. PNK seeks to have Mr. Mouton declared liable *in

solido* with his co-defendants in the amount of $1,118,050.00—the full amount of PNK's loss—

less any amounts paid by his co-conspirators.[28] Mr. Mouton's Opposition [Doc. 41] focuses

almost exclusively on the damages issue, noting both that Mr. Mouton's involvement did not

---

[28] Memo. in Supp. [Doc. 39-1], at 2.

begin until March, 2011, as well as the fact that he has already been ordered to pay $110,000.00 in restitution in connection with his guilty plea.[29]

PNK, however, cites Louisiana Civil Code article 2324 for the proposition that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." LA. CIV. CODE ANN. art. 2324 (1996).[30] Recovery under this article does not constitute a claim for civil conspiracy *per se*; the "actionable element . . . [is] the tort which the conspirators agreed to perpetrate and which they actually commit[ed] in whole or in part." *Boudreaux v. Jeff*, 884 So. 2d 665, 672 (La. Ct. App. 2004) (*citing Ross v. Conoco, Inc.*, 828 So. 2d 546, 552 (La. 2002)). The purpose of imposing solidary liability in this manner is "to compel any tortfeasor to pay the entire judgment." *Id.* (citation omitted). Moreover, "[a]n obligation may be solidary though it derives from a different source for each obligor." *Id.* (*citing* LA. CIV. CODE ANN. art. 1797).

PNK's argument is well-taken, but it overstates Mr. Mouton's involvement, thereby overstating his liability. Mr. Mouton conspired with others to "commit an intentional or willful act" on a total of three occasions "resulting in a loss to PNK of $171,000."[31] The appropriate application of article 2324 would be to view Mr. Mouton's involvement as stemming only from these three tortious acts, through which he breached the fiduciary duties he owed to PNK. While the court appreciates that PNK sustained significantly more losses—approximately $947,050.00—on the ten occasions between January and May, 2011, where Mr. Weldon dealt to Mr. Tannous and Mr. Lubbat, it would be an inappropriate and inequitable construction of the statute to hold that the entirety of the four defendants' collective actions from January through May of 2011 constituted a single "act" so as to impose liability for the whole upon Mr. Mouton.

---

[29] *See generally* Opp. [Doc. 41].
[30] *See* Memo. in Supp. [Doc. 39-1], at 9.
[31] Decl. of Darrin Hoke [Doc. 39-7], at ¶ 6.

It should also be noted that, by way of comparison, Mr. Mouton was paid less than $8,000.00 for his involvement in this conspiracy.[32]  He was ordered to pay $110,000.00 in restitution as a result of his guilty plea in the criminal proceeding in this matter.[33]  Mr. Mouton was the dealer in this scheme on three occasions only, as opposed to Mr. Weldon, who was the dealer on ten occasions.[34]  Mr. Tannous profited over $900,000.00; Mr. Lubbat profited over $150,000.00; and Mr. Weldon was responsible for the loss of nearly $1,000,000.00 from PNK. Mr. Mouton's direct involvement resulted in losses totaling $171,000.00 from PNK, and for that, and that alone, he is liable.  Accordingly,

**IT IS ORDERED** that PNK's Motion for Summary Judgment is hereby **GRANTED** insofar as it requests an award of damages from the defendant, Stephen Mouton.  Mr. Mouton is hereby **ORDERED** to pay damages to PNK in the amount of ONE HUNDRED SEVENTY-ONE THOUSAND 00/100 DOLLARS ($171,000.00), with deductions for any amounts paid to or collected by PNK as restitution by Mr. Mouton or any other defendant, in the past or future, in criminal action number 2:11-cr-153.

Lake Charles, Louisiana, this 14 day of _____ May _____, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[32] *See* Stipulated Factual Basis for Guilty Plea [Doc. 39-5]; same [Doc. 85-3 in case no. 2:11-cr-153].
[33] Minutes of Court [Doc. 39-6]; same [Doc. 130 in case no. 2:11-cr-153].
[34] Decl. of Darrin Hoke [Doc. 39-7], at ¶ 6.